UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

LINDA PAYTON,                                                    CV 07-6004 TC

               Plaintiff,

        v.                                                FINDINGS AND RECOMMENDATION

MICHAEL J. ASTRUE,
Commissioner of Social Security,

               Defendant.


COFFIN,  Magistrate Judge:

## **INTRODUCTION**

      Plaintiff Linda Payton brings this action pursuant to the Social Security Act, 42 U.S.C. §
405(g) ("the Act"), to obtain judicial review of a final decision of the Commissioner of the Social
Security Administration ("Commissioner") denying her claim for disability insurance benefits.
For the reasons set forth below, the decision of the Commissioner should be affirmed and this
matter should be dismissed.

      Plaintiff completed high school and one year of college.  She was 63 years old at the

1 - FINDINGS AND RECOMMENDATION

December 2005 hearing.  She worked as an administrative assistant for eleven years for Blue
Shield of California.

## PROCEDURAL BACKGROUND

On October 30, 2001, plaintiff filed an application for disability insurance benefits.  The
application was denied initially and on reconsideration.  On July 8, 2003, a hearing was held
before an Administrative Law Judge ("ALJ"), and on August 4, 2003, the ALJ issued a decision
denying benefits.  The Appeals Council affirmed the ALJ, and that decision was appealed to
federal court.

On September 2, 2004, Magistrate Judge Cooney filed Findings and Recommendations in
which he recommended that the Commissioner's decision be affirmed.  Tr. 68-80.  After *de novo*
review, Judge Aiken adopted the Recommendations on October 26, 2004.  Tr. 65-67.

Plaintiff filed this application for disability insurance benefits and a period of disability
on September 11, 2003, alleging disability commencing May 19, 2000.  The claim was denied
initially and upon reconsideration.  A hearing was held on December 8, 2005, and on July 24,
2006, the ALJ issued a decision in which he found plaintiff not disabled.  The Appeals Council
affirmed the ALJ's decision.

## DISCUSSION

Plaintiff contends that the ALJ erred by: (1) rejecting a treating doctor's disability opinion
and finding plaintiff less than fully credible; (2) posing an inadequate hypothetical question to the
Vocational Expert (VE); and (3) failing to properly consider lay evidence.

I.  Effect of Prior ALJ Findings

The first ALJ rejected the June 2003 opinion of N. Paul Hudson, M.D., plaintiff's treating

2 - FINDINGS AND RECOMMENDATION

neurologist, that plaintiff was "unable to function on a regular schedule for any type of work, regardless of the amount of physical activity required." Tr. 247, 202.  Dr. Hudson wrote:

> [Plaintiff] suffers from fibromyalgia syndrome, a painful musculoskeletal disorder of unknown etiology, characterized by varying degrees of widespread musculoskeletal pain, fatigue, sleep problems, cognitive dysfunction, and generally poor functional status.  This diagnosis is supported by her history of chronic pain and fatigue, unresponsive to multiple types of standard medical therapy for arthritis, accompanied by complaints of nonrestorative sleep and remarkable levels of soft tissue tenderness on a tender point examination.
>
> Although she has had modest improvement with several different medicines I have used to improve her sleep pattern, her symptoms remain generally stable and poorly controlled. At the present time, she is unable to function on a regular schedule for any type of work, regardless of the amount of physical activity required.  Although she might be more comfortable some days, I have no doubt that she would be unable to maintain regular attendance at work without multiple absences.  Additionally, chronic fatigue and impaired concentration make it very difficult for these patients to perform satisfactorily in almost any job.
>
> I always prefer the opportunity to report good news, but my efforts on [plaintiff's] behalf have not been successful.  I have no more to offer her medically, and expect that her illness, now stable for the past nine years, will likely continue and possibly progress.

Tr. 202.

The ALJ noted that plaintiff first saw Dr. Hudson in April 2003, and only saw the doctor four times before the letter was written.  The ALJ noted discrepancies in the treatment notes, and that Dr. Hudson had only physically examined the claimant at the initial examination and even then deferred the majority of the musculoskeletal examination.  Tr. 247.  The ALJ cited inconsistencies with other medical evidence and the claimant's activities of daily living, and that

3 - FINDINGS AND RECOMMENDATION

Dr. Hudson's report relied on the claimant's self reports. *Id.* The first ALJ found plaintiff not entirely credible as to the limitations arising from her conditions. Tr. 248. The ALJ's findings were affirmed as supported by substantial evidence by two judges of this court. Tr. 65-67; 68-80.

In the current proceeding the ALJ cited Dr. Hudson's June 2003 opinion, and noted that the opinion was not consistent with prior treatment notes. Tr. 15. The second ALJ cited Dr. Hudson's repeated advice that plaintiff exercise more, and noted that her sleep issues were improved with the prescription of Klonopin. The ALJ found that the plaintiff was not entirely credible as to the intensity, duration, and limiting effects of her symptoms. Tr. 16. He noted that plaintiff's statements were inconsistent with the medical evidence. The ALJ pointed out inconsistencies in plaintiff's testimony, specifically that she alleged that she had left her last job due to increased severe overall pain and fatigue which resulted in the inability to concentrate and perform the work tasks. However, plaintiff later testified that she stopped working because her commute was over 100 miles per day, and that she intended to find work closer to her home. Plaintiff admitted that she quit her job without discussing any performance difficulties with her employer, and that she had successfully functioned at work despite fibromyalgia for over five years. The second ALJ also took note of the prior ALJ's decision regarding Dr. Hudson's opinion and plaintiff's credibility, and the court decisions regarding those issues.

If an initial ALJ's final decision is that a claimant is not disabled, a continuing presumption of nondisability arises, absent changed circumstances indicating a greater disability. *Chavez v. Bowen,* 844 F2d 691, 693 (9th Cir. 1988). The *Chavez* court found that the attainment of "advanced age," as defined by the regulations, constituted a changed circumstance "precluding the application of res judicata to the first administrative law judge's ultimate finding against

4 - FINDINGS AND RECOMMENDATION

disability." *Id.* "Principles of res judicata made binding the first judge's determinations that the

claimant had a residual functional capacity of light work, was of limited education, and was

skilled or semi-skilled. The claimant's attainment of 'advanced age' status became legally

relevant and should have been considered." *Chavez,* 844 F2d at 694.

The SSA issued Acquiescence Ruling ("AR") 97-4(9) with respect to claims previously

denied in the Ninth Circuit. It provides in relevant part:

> When adjudicating the subsequent claim involving an unadjudicated
> period, adjudicators will apply a presumption of continuing nondis-
> ability and determine that the claimant is not disabled with respect
> to that period, unless the claimant rebuts the presumption.   A
> claimant may rebut the presumption by showing "changed circumstances"
> affecting the issue of disability with respect to the unadjudicated period,
> e.g., a change in the claimant's age category under 20 CFR 404.1563 or
> 416.963, an increase in the severity of the claimant's impairment(s), the
> alleged existence of an impairment(s) not previously considered, or a
> change in the criteria for determining disability.

The relevant time period is from August 5, 2003, the day after the prior unfavorable

decision, through December 31, 2005, plaintiff's date last insured for Title II disability insurance

benefits.

Plaintiff argues that she has rebutted the presumption of nondisability because "changed

circumstances" are demonstrated by a variance in the residual functional capacity ("RFC")

assessments made by the ALJs. The first ALJ found that plaintiff retained the capacity for "light

work with a sit/stand option every hour." The second ALJ set in bold-faced type his seven

Findings of Fact and Conclusions of Law, under each of which he discussed the relevant

evidence and his reasoning. In heading number five, relating to residual functional capacity,  the

ALJ stated that plaintiff had the capacity to:

5 - FINDINGS AND RECOMMENDATION

> perform light to sedentary work with a sit/stand option at will
> and is able to lift/carry 20 pounds occasionally, 10 pounds
> frequently with the ability to sit/stand/walk about 6 hours in an
> 8-hour day. She also has occasional limitations in climbing,
> stooping, kneeling, crouching and crawling.

Tr. 15. However, in his nearly three page explanation of heading number five, the ALJ discusses

the medical evidence and concludes that the:

> residual functional capacity assessed herein is found to be the
> same as previously determined in the Administrative law Judge
> decision rendered August 4, 2003 [citation omitted]. As noted
> previously, this decision was upheld by the United States District
> Court, District of Oregon, on October 26, 2004. The treatment
> record since the prior adjudication has been rather minimal with
> no diagnoses posing more restrictions on the claimant than
> previously assessed.

Tr. 17. The second ALJ's heading at Tr. 15 is inconsistent with his own analysis and not

supported by the evidence. The error in the heading is harmless and the differences in the ALJ

decisions do not demonstrate "changed circumstances" affecting the issue of disability during the

unadjudicated period. Moreover, plaintiff has not shown how the inclusion of the limitations in

climbing, stooping, kneeling, crouching and crawling would preclude her ability to perform her

past relevant work.

II. New and Material Evidence Relating to the RFC Assessment

Even if the second ALJ's RFC assessment demonstrated "changed circumstances" to rebut

the presumption of nondisability, plaintiff must show "new and material evidence" relating to the

RFC assessment. AR 97-4(9). Plaintiff contends that new evidence demonstrates that the second

ALJ erred in rejecting Dr. Hudson's opinion and finding plaintiff not entirely credible.

/ / /

6 - FINDINGS AND RECOMMENDATION

A. Dr. Hudson

Dr. Hudson saw plaintiff six times between July 3, 2003, and April 1, 2004. Tr. 133, 132, 170, 169, 168, 170. Plaintiff contends that these treatment notes are new and material evidence confirming Hudson's June 2003 opinion.

On July 3, 2003, Dr. Hudson wrote that plaintiff was "reporting she has been about the same on this program, with continued problems with muscle cramping....She reports lots of physical restlessness related to stress. Better on more nortripytiline, wary of using more." Tr. 133. He noted "Fibromyalgia syndrome, improving with this rx. Continue on current therapy, and add regular exercise. OK to push nortripytiline. Return in 4 mos." *Id.* Plaintiff's only pain medication was Aleve.

On July 8, 2003, the first hearing before an ALJ was held, and the decision denying disability was issued on August 4, 2003.

On September 11, 2003, Dr. Hudson said that plaintiff was "reporting she has not been doing well over the past interval, sleeping less well and tolerating exercise poorly. She is complaining today of active depression...." Tr. 132. He prescribed Paxil and told her to taper off the nortripytiline.

On October 30, 2003, plaintiff reported that she had stopped taking the Paxil due to nausea and excessive sedation. She started Wellbutrin and "is feeling better already, with only about 2 wks of therapy. She is swimming nightly, and this helps." Tr. 170. She continued to have nocturnal muscle spasms waking her in the night. Dr. Hudson wrote that both fibromyalgia syndrome and depression were "responding to rx. Needs help with cramps." *Id.* He prescribed quinine for cramps.

7 - FINDINGS AND RECOMMENDATION

On December 4, 2003, Dr Hudson reported that plaintiff was "doing better on this program with Wellbutrin, at this dose, with better mood stability. Still has sleep and pain issues. Uses ibuprofen qid and finds this very important. Myalgias [muscle pain] are her primary pain. Fatigue still bothers her alot [sic]. Quinine is working well." Tr. 169. Dr. Hudson noted that both fibromyalgia and depression were "responding to rx," and recommended that she continue her current medications and exercise more. *Id.*

On February 5, 2004, plaintiff reported she continued to wake early, she had started exercising "at a low level," but continued to be fatigued. Tr. 169. She had restless leg syndrome symptoms despite the Sinemet, and Dr. Hudson recommended replacing Sinemet with Klonopin.

On April 1, 2004, plaintiff reported that the Klonopin had no effect on her restless leg syndrome, but she "found it to be helpful with prolonging her sleep. She has responded partially to Sinemet, but still is struggling with pain. She asks about using more Wellbutrin, and that seems like a good idea. I have nothing more to offer her, but think a sleep evaluation might be helpful." Tr. 168. Dr. Hudson wrote that plaintiff's response to medication "has been encouraging but not impressive," increased the dose of Wellbutrin, and referred her for a sleep evaluation. *Id.* She took Ibuprofen for pain. He advised her to return as necessary, but there is no evidence that plaintiff saw Dr. Hudson again.

Plaintiff contends that Dr. Hudson concluded that her symptoms had become worse, medication was ineffective, and Hudson was giving up because her condition had worsened to the point of being impossible to treat. Plaintiff's Opening Brief at 16. These assertions are not supported by the record. Plaintiff argues that this evidence indicates that her condition had worsened. To the contrary, the evidence is that her sleeping issues were improving on Klonopin,

8 - FINDINGS AND RECOMMENDATION

quinine was controlling her restless leg syndrome symptoms, and her fibromyalgia and depression were responding to medication.  Plaintiff says that, in the end, Dr. Hudson "threw in the towel."  *Id.*  This assertion is simply wrong.  Dr. Hudson ordered a sleep evaluation and advised plaintiff to return as necessary.  Tr. 168.

Plaintiff contends that the second ALJ erred by rejecting Dr. Hudson's disability opinion without considering Dr. Hudson's evidence accruing after June 2003.  This assertion is not correct.  The second ALJ referred to Dr. Hudson's December 2003 notes, erroneously dating them as December 2004, and the fact that plaintiff's symptoms were responding to treatment.  Tr. 15.  The ALJ cited Dr. Hudson's recommendations regarding increased exercise, and his final treatment note regarding the improvement in plaintiff's sleep issues.  Tr. 16.

The ALJ's decision to reject Dr. Hudson's June 2003 opinion is supported by substantial evidence and free of legal error.

B.  Plaintiff's Credibility

As set out above, plaintiff has not shown "changed circumstances" to rebut the presumption of nondisability arising from the first ALJ's decision.  Nor has she shown "new and material" evidence relating to her credibility.  However, the court will address the second ALJ's credibility analysis.

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities.  *Andrews v. Shalala,* 53 F3d 1035, 1039 (9th Cir 1995).  However, the ALJ's findings must be supported by specific, cogent reasons.  *Reddick v. Chater,*

157 F3d 715, 722 (9th Cir 1998). Unless there is affirmative evidence showing that the claimant is malingering, the Commissioner's reason for rejecting the claimant's testimony must be "clear and convincing." *Id*. The ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints. *Id*. The evidence upon which the ALJ relies must be substantial. *Reddick*, 157 F3d at 724. *See also Holohan v. Massinari*, 246 F3d 1195, 1208 (9th Cir 2001). General findings (e.g., "record in general" indicates improvement) are an insufficient basis to support an adverse credibility determination. *Reddick* at 722. *See also Holohan*, 246 F3d at 1208. The ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony. *Thomas v. Barnhart*, 278 F3d 947, 958 (9th Cir 2002).

In deciding whether to accept a claimant's subjective symptom testimony, "an ALJ must perform two stages of analysis: the *Cotton* analysis and an analysis of the credibility of the claimant's testimony regarding the severity of her symptoms." [Footnote omitted.] *Smolen v. Chater*, 80 F3d 1273, 1281 (9th Cir 1996).

> Under the *Cotton* test, a claimant who alleges disability based on subjective symptoms "must produce objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged...." *Bunnell*, 947 F.2d at 344 (quoting 42 U.S.C. § 423 (d)(5)(A) (1988)); *Cotton*, 799 F.2d at 1407-08. The *Cotton* test imposes only two requirements on the claimant: (1) she must produce objective medical evidence of an impairment or impairments; and (2) she must show that the impairment or combination of impairments *could reasonably be expected to* (not that it did in fact) produce some degree of symptom.

*Smolen*, 80 F3d at 1282.

10 - FINDINGS AND RECOMMENDATION

To determine whether plaintiff's testimony is credible the ALJ may consider, for example: (1) ordinary techniques of credibility evaluation, such as a reputation for lying or prior inconsistent statements; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities. *Smolen,* 80 F3d at 1284.

Plaintiff testified that she was diagnosed with fibromyalgia about four years before she quit her job, and that "as time went on I just became more and more ill as far as my pain levels and not being able to sleep at night and I was commuting 100 miles a day at work, and then of course having a high-pressure job. And as time went on I just became unable to really function really well on my job...." Tr. 221-22. Plaintiff stated that she was not sleeping well and was fatigued, and that it was getting harder and harder to get up in the morning. She had to lie down for an hour when she got home before she could do anything, but she was not missing work. Tr. 222. Plaintiff testified that she loved her job, and hoped to find work after moving to Oregon that would be less stressful and closer to home. Tr. 223. Plaintiff testified that she has to lie down for ten to twenty minutes after vacuuming a room or doing a couple of loads of laundry, and that this was true at the time she quit working. Tr. 224. In the six months prior to the December 2005 hearing plaintiff experienced pain in the muscles of her back that require her to lie down with ice packs four to six times a day. Tr. 228.

The ALJ found that plaintiff's "statements concerning the intensity, duration and limiting effects of these symptoms are not entirely credible." Tr. 16. He noted that plaintiff's statements

11 - FINDINGS AND RECOMMENDATION

were inconsistent with the medical evidence and that she left work because of pain and fatigue, but intended to find work closer to home.  Tr. 16.  The ALJ cited medical records from 2005 through 2006 indicating that plaintiff's medical condition required minimal care with routine visits for medication refills, and a November 2005 examination which was normal except for "localized tenderness over the thoracic spine."  Tr. 17, 206.  At that time, plaintiff was taking Ibuprofen three times a day for pain.

The ALJ provided clear and convincing reasons for his credibility determination that are supported by substantial evidence.

III.  Lay Testimony

In October 2003, plaintiff's husband stated that his wife does normal household duties with "many rest periods in between tasks."  Tr. 116.  He wrote that sometimes plaintiff  "just sits in her chair all day because of severe pain or fatigue."  Tr. 119.  He stated that she cannot lift anything over five pounds, and that her memory and concentration are affected by fibromyalgia. Tr. 121.

The ALJ need not discuss all evidence.  *Vincent v. Heckler,* 739 F2d 1393, 1394 (9th Cir 1984)(citing *Lewin v. Schweiker,* 654 F2d 631, 634 (9th Cir 1981).  Here, the lay witness evidence is relevant to three months, August 5, 2003, to October 4, 2003.  The medical evidence indicates that by October 30, 2003, plaintiff was taking Wellbutrin and swimming nightly and feeling better. Tr. 170.  The ALJ's decision is supported by substantial evidence.

IV. Reliance on the Vocational Expert

12 - FINDINGS AND RECOMMENDATION

Plaintiff contends that the ALJ erred by relying on the VE testimony from the first hearing that plaintiff could return to her past relevant work when, according to plaintiff, the ALJ had found additional limitations not presented at the first hearing. As set out above, the second ALJ found plaintiff had the same RFC as did the first ALJ. In addition, the second ALJ explicitly relied on the opinion of the state agency physician. Tr. 17. Finally, the ALJ is not required to use a VE unless there is an absence of other reliable evidence. *Gomez v. Chater,* 74 F3d 967, 971 (9th Cir 1996). Because the ALJ determined at step four that plaintiff failed to meet her burden of proving that she could not perform her past relevant work, he was not required to rely on the VE testimony.

V. The ALJ's Findings Do Not Compel a Finding of Disability

Plaintiff argues that because the ALJ found her limited to the ability to "sit/stand/walk about 6 hours in an eight hour day" she is unable to perform full-time work. It is a tortured contortion of reason to construe this phrase, in context, as a determination that plaintiff is unable to work more than six hours in an eight hour day. The phrase appears in the ALJ's heading number five which contains harmless error as set out above. The ALJ found that plaintiff's RFC was unchanged from her first claim, and continued to be for light work with a sit/stand option, and he specifically found that she was capable of returning to her past relevant work as an administrative assistant.

## **RECOMMENDATION**

The ALJ's finding that plaintiff is not disabled is based on the correct legal standards and

supported by substantial evidence.  For these reasons, the Commissioner's decision should be

affirmed and final judgment should be entered.

///

///

Dated this $12^t$ __ day of March, 2008.

THOMAS M. COFFIN
United States Magistrate Judge

14 - FINDINGS AND RECOMMENDATION